**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
——————————————————————————

**ADIRONDACK COOKIE COMPANY INC.,**
*doing business as* **CORSO'S COOKIES,**

                                        **Plaintiff,**

        **vs.**
                                                                **5:11-cv-1048**
                                                                **(MAD/DEP)**

**MONACO BAKING COMPANY*,***

                                        **Defendant.**
——————————————————————————

**APPEARANCES:**                    **OF COUNSEL:**

**HANCOCK & ESTABROOK, LLP**        **ASHLEY D. HAYES, ESQ.**
1500 AXA Tower I                    **JAMES P. YOUNGS, ESQ.**
Syracuse, New York 13221
Attorneys for Plaintiff

**LEE PALMATEER LAW OFFICE, LLC**   **LEE PALMATEER, ESQ.**
90 State Street, Suite 700
Albany, New York 12207
Attorneys for Defendant

**LAUSON & TARVER, LLP**            **ROBERT J. LAUSON, ESQ.**
880 Apollo Street, Suite 301
El Segundo, California 90245
Attorneys for Defendant


**Mae A. D'Agostino, U.S. District Judge:**


**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Plaintiff commenced this action on September 1, 2011, pursuant to the Declaratory

Judgment Act.  Currently before the Court is Defendant's motion to dismiss for lack of personal

and subject-matter jurisdiction.  *See* Dkt. No. 8.

## II. BACKGROUND

**A.        Underlying conduct**

Plaintiff is a New York corporation, with its principal place of business at 314 Lakeside Road, Syracuse, New York.  *See* Dkt. No. 5 at ¶ 2.  Defendant is a California corporation, with its principal place of business at 14700 Marquardt Avenue, Santa Fe Springs, California.  *See id.* at ¶ 3.

Plaintiff is in the business of manufacturing, decorating and selling handmade, high-quality cookies.  *See id.* at ¶ 9.  Plaintiff's cookies are packaged and sold in a variety of ways, one of which is as a "Cookie Bouquet."  *See id.* at ¶ 10.  A Cookie Bouquet is comprised of several components that are combined in a way so as to display the cookies in a manner reminiscent of a flower arrangement or bouquet.  *See id.* at ¶ 11.  The Cookie Bouquet is comprised of decorative cookies, each one resting on a clear plastic pedestal attached to a wood post (the "Stand"), which is inserted into a hole cut into a rounded base, for display in a manner similar to a flower arrangement.  *See id.* at ¶ 12.

The plastic pedestals of the Stands used in the Cookie Bouquets are manufactured from a mold.  *See id.* at ¶ 13.  At the time the mold for the Cookie Bouquet Stand was created, Plaintiff intended to apply for a patent covering its design and, therefore, the words "Patent Pending" were incorporated into the mold during the design phase.  *See id.*  Plaintiff, however, never applied for a patent and the Patent Pending imprint was inadvertently retained on the mold due to an oversight, resulting in the imprint of Patent Pending on a limited number of the Cookie Bouquet Stands.  *See id.* at ¶ 14.

On August 3, 2011, Defendant, through its attorney, contacted Plaintiff and informed Plaintiff that it was aware that Plaintiff 's Cookie Bouquet Stand is nearly identical to a cookie

support stand used by Defendant. *See id.* at ¶ 19.  In its letter, Defendant claimed to be "'the inventor of the cookie support stand packaging concept.'"  *See id.*  Defendant further accused Plaintiff of copying its design for the Stand and filing a fraudulent patent application with the Patent Office, considering that Defendant is the actual inventor of the Cookie Support Stand.  *See id.*; *see also* Dkt. No. 8-5.

On August 31, 2011, Defendant sent Plaintiff an additional letter informing Plaintiff that it believed that it has a claim for false marking pursuant to 35 U.S.C. § 292 (the "False Marking Statute") and that, "if a patent application is pending, [Plaintiff's] letter does not address the false declaration that must have been filed, meaning [Defendant] has a cause[ ] of action in the alternative for the fraud practiced on the Patent Office."  *See* Dkt. No. 8-9.

In response to this correspondence, Plaintiff brought this action against Defendant pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a judicial declaration that it is not liable for false marking under the Patent Act, 35 U.S.C. § 292.  *See* Dkt. No. 5 at ¶ 1.

**B.     Relevant statutory provisions**

The False Marking Statute was enacted on August 29, 1842.  *See* 5 Stat. 544, § 5.  The statute provided for a fine of "not more than $500" for each article a defendant falsely marked as patented "for the purpose of deceiving the public."  *Id.*  For over a hundred years, "the fine was levied only once on each scheme to falsely mark, rather than once on each item falsely marked." *Advanced Cartridge Technologies, LLC v. Lexmark International, Inc.*, No. 8:10-cv-486, 2011 WL 6719725, *1 (M.D. Fla. Dec. 21, 2011) (citing Odin B. Roberts, *Actions Qui Tam Under the Patent Statutes of the United States*, 10 HARV. L. REV. 265, 272–73 (1896)).

The False Marking Statute's *qui tam* provision "authorize[d] someone to pursue an action on behalf of the government as well as himself." *Stauffer v. Brooks Brothers, Inc.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010) (internal quotation mark omitted). According to the Federal Circuit Court of Appeals,

> [f]alse marking can injure the public interest in full and free competition because the act of false marking misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article.

*Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1351 (Fed. Cir. 2011) (quoting *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1356–57 (Fed. Cir. 2005)). As an incentive to *qui tam* plaintiffs, the statute enabled "any person to sue for the statutory penalty and retain one-half of the recovery." *Boyd v. Schildkraut Giftware Corp.*, 936 F.2d 76, 79 (2d Cir. 1991).

By assigning a portion of the United States' damages claim to "any person," Congress effectively granted *qui tam* plaintiffs Article III standing to sue under the False Marking Statute. *See Stauffer*, 619 F.3d at 1325 (holding that "Congress has, by enacting section 292, defined an injury in fact to the United States. . . .  Because the government would have standing to enforce its own law, [a *qui tam* plaintiff], as the government's assignee, also has standing to enforce the [False Marking Statute]"). "[E]ven though a [*qui tam* plaintiff] may suffer no injury himself, a *qui tam* provision operates as a statutory assignment of the United States' rights, and 'the assignee of a claim has standing to assert the injury in fact suffered by the assignor.'" *Id.* (quoting *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000)). Accordingly, a *qui tam* plaintiff proceeding under the original False Marking Statute did not need

to allege injury to himself or injury to competition in order to have standing to sue. *See id.* at 1327.

Despite the provision for *qui tam* suits in the original statute, the False Marking Statute remained largely dormant until 2010, when the effects of the Federal Circuit's decision in *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1301-04 (Fed. Cir. 2009), were realized. *See Berkeley Technology Law Journal Annual Review 2011, Patent Law: Additional Developments*, 26 BERKELEY TECH. L.J. 367, 368 (2011). The Federal Circuit in *Forest Group, Inc.*, held that a plaintiff bringing suit under the False Marking Statute could recover a distinct fine for each falsely marked item. This holding led to a rapid increase in the number of large false marking awards. *See Advanced Cartridge Technologies, LLC*, 2011 WL 6719725, at *2.

On September 16, 2011, President Barack Obama signed into law the Leahy–Smith America Invents Act. *See Leahy–Smith America Invents Act,* Pub. L. No. 112–29, 125 Stat. 284 (Sep. 16, 2011). Part of this new legislation amended 35 U.S.C. § 292 to, among other things, eliminate the *qui tam* provisions of the False Marking Statute and institute a "competitive injury" requirement for false marking suits. *See id.* Specifically, this new provision provides that "a person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury." 35 U.S.C. § 292(b). As such, a private party may now sue under the provisions of the False Marking Statute if they have suffered a "competitive injury" from the defendant's actions. *See id.*

## III. DISCUSSION

Defendant argues that the Court should decline to exercise jurisdiction over this matter because Plaintiff is simply using the Declaratory Judgment Act to "attempt to preserve the local forum and gain a strategic advantage over [Defendant], trying to force it to agree to a general release of all claims (including as to its pending patent) to make the nuisance lawsuit go away." *See* Dkt. No. 8-1 at 21.  Further, Defendant asserts that the 2011 amendments to the False Marking Statute make Plaintiff's action premature, since Defendant can no longer bring a *qui tam* action and because its patent application is only pending and, therefore, it does not yet have any proprietary rights in the invention.  *See* Dkt. No. 15 at 3-4.  Plaintiff, however, claims that this matter is ripe for review because, in patent infringement cases, "'there is not even a need for a party to have a reasonable apprehension of suit.'"  *See* Dkt. No. 13 at 20 (quotation and other citation omitted).  Plaintiff argues that "the questions of [its] liability for false marking and the existence of 'competitive injury' suffered by [Defendant] are ripe for adjudication."  *See id.* at 21.  Finally, Plaintiff asserts that the Court should exercise its discretion to hear this justiciable controversy.  *See id.* at 22.


A.      **Standard of review**

When a party moves to dismiss a claim pursuant to Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted).  For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true. . . ."  *Id.* (internal citations omitted).  Both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose the

motion to dismiss for lack of subject matter jurisdiction.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).  "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").

**B.**     **Declaratory judgment jurisdiction**

The Declaratory Judgment Act provides, in part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The "actual controversy" requirement under the Declaratory Judgment Act is coextensive with Article III's case or controversy requirement.  *See Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41, 57 S. Ct. 461, 463–64, 81 L. Ed. 617 (1937)).  "The requirement of an actual controversy encompasses concepts such as ripeness, standing, and the prohibition against advisory rulings."  *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993); *see also Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1291 (Fed. Cir. 2008) (noting that the concepts of

standing, ripeness, and mootness bear on whether a case is justiciable under Article III of the

Constitution) (citation omitted).

       The existence of a case or controversy is highly dependent upon the particular facts at

issue.  The difference between an actual controversy and an abstract question in a given case "is

necessarily one of degree," and must be ascertained by examining the totality of the

circumstances to determine whether there is a "substantial controversy between parties having

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment."  *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoting *Md. Cas. Co. v.

Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941)).

       In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), the Supreme Court

reiterated that the proper inquiry "'is whether the facts alleged, under all the circumstances, show

that there is a substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Id.* at 127 (quotation

and footnote omitted).  Moreover, the Court rejected the Federal Circuit's prior, more strict,

"reasonable apprehension of imminent suit" test for declaratory judgment standing as inconsistent

with the Court's prior decisions.  *See id.* at 132 n.11.[1]

       Since *MedImmune*, the Federal Circuit has applied the "under all the circumstances"

standard, while recognizing that a reasonable apprehension of suit is "only one of many ways a

patentee can satisfy the . . . all-the-circumstances test."  *Caraco Pharm. Labs.*, 527 F.3d at 1291.

Moreover, the Federal Circuit has held that *MedImmune* did not disturb many of its previous

---

      [1] The reasonable apprehension test required "both (1) an explicit threat or other action by
the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that
it will face an infringement suit and (2) present activity which could constitute infringement or
concrete steps taken with the intent to conduct such activity."  *Novartis*, 482 F.3d at 1339.

patent-related case or controversy principles, including that "declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). Therefore, the existence of an adverse patent or a subjective fear of potential legal ramifications, without more, is insufficient to invoke declaratory judgment jurisdiction. *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) (citation omitted). Rather, a justiciable controversy requires some affirmative act by the patentee, such as "creating a reasonable apprehension of an infringement suit," "demanding the right to royalty payments," "or creating a barrier to the regulatory approval of a product that is necessary for marketing." *Id.* (citation omitted).

In the present matter, Plaintiff asks the Court to declare (1) that "its marking of the Stands . . . does not give rise to liability under the False Marking Statute" and (2) that Defendant lacks standing to bring a 35 U.S.C. § 292 claim against Plaintiff because Defendant has not suffered a competitive injury. *See* Dkt. No. 5 at ¶¶ 27-31.

In Defendant's first letter to Plaintiff, Defendant stated that, since it "is the inventor of the cookie support stick packaging concept, someone associated with [Plaintiff's] company must have copied the design and filed a false declaration claiming inventorship, assuming one or more patent applications are actually pending and your product is not being falsely marked in violation of the federal false marking statute, 35 U.S.C. 292." *See* Dkt. No. 8-5. Plaintiff, however, admits in their complaint that, although it intended to apply for a patent for its Cookie Bouquet Stand, no such patent was ever applied for. *See* Dkt. No. 5 at ¶ 14. As such, Plaintiff acknowledges that

there is no legitimate possibility of suit regarding Defendant's initial indication that Plaintiff may have committed a "fraud practiced on the Patent Office." *See* Dkt. No. 8-9.

Moreover, Defendant's counsel first contacted Plaintiff regarding their potential false marking claim on August 3, 2011, prior to the September 16, 2011 change in the False Marking Statute that eliminated the *qui tam* provision. *See* Dkt. No. 8-5. The final letter Defendant's counsel sent to Plaintiff was on August 31, 2011. *See* Dkt. No. 8-9. Again, this was prior to the changes made to the False Marking Statute. Although an actual "controversy" was clear under the *qui tam* provision of the prior version of the False Marking Statute, such a controversy is no longer obvious. Specifically, the Court cannot discern what possible "competitive injury" Defendant has suffered because Plaintiff marked their Cookie Bouquet Stand as "Patent Pending" for a short period of time, prior to Defendant obtaining a valid patent. If Defendant had a valid patent, with the enforceable rights that accompany such a valid patent, instead of a patent application pending, such "competitive injury" would be clear. Since Defendant's patent application was and is still pending, the Court fails to comprehend what injury Defendant could claim if it decided to bring a suit under the newly enacted False Marking statute.

In certain cases, declaratory judgment jurisdiction can be found where the owner of an allegedly valid patent has restrained the right of the alleged infringer in "its right to freely market" the alleged infringing product. *See Prasco, LLC v. MEDICIS Pharmaceutical Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008). The Federal Circuit has made clear that, "[r]ather than a purely subjective fear or the mere existence of a potentially adverse patent alone, the alleged injury at the root of most justiciable declaratory judgment controversies in the patent context is a 'restraint on the free exploitation of non-infringing goods,' or an imminent threat of such restraint." *Id.* (quotation and other citation omitted). In the present matter, Plaintiff does not allege that it can

no longer use its Cookie Bouquet Stand and, therefore, it is not claiming that it can no longer freely market its product.

Plaintiff is correct that, "in the patent infringement context, there is not even a need for a party to have a 'reasonable apprehension of suit.'" *Green Edge Enterprises, LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1300 (Fed. Cir. 2010) (quotation omitted).  In the present matter, however, unlike the cases relied upon by Plaintiff, Defendant does not yet, and may never, have a valid patent for its own cookie support stand.  Defendant simply has an application for a patent pending.  Defendant did not allege in its letters that Plaintiff had infringed on its patent because no such patent exists.  Without a valid patent, Defendant cannot bring a patent infringement suit because it does not yet have any proprietary rights in its cookie support stand and the Court cannot discern what possible competitive injury Defendant has suffered as a result of Plaintiff's conduct, as required under the newly revised False Marking Statute.  Therefore, although Plaintiff may not even need a "'reasonable apprehension of suit,'" the possible controversy between the parties must still be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune*, 549 U.S. at 127.  No such controversy "of sufficient immediacy" exists in the present matter.

Although Defendant did send Plaintiff letters discussing possible legal issues, these letters simply indicated that Plaintiff may have committed a fraud on the Patent Office by filing a fraudulent patent application, or that Plaintiff may have been in violation of the former version of the False Marking Statute.  Defendant never asserted that it planned to bring suit against Plaintiff for infringing on its patent rights, nor could it since its patent application was and is still pending.  Considering all of the circumstances of Plaintiff's action – including the changes made to the False Marking Statute, the fact that Defendant's patent application was and is still pending, the

fact that the letters discussing the possibility of legal ramifications were made prior to the changes

made to the False Marking Statute, and that Plaintiff never filed a patent application for its

Cookie Bouquet Stand – the Court finds that Plaintiff's complaint fails to present an actual

justiciable controversy; and, therefore, the Court lacks jurisdiction over this Declaratory

Judgment action.


**C.      Discretion to decline jurisdiction**

        In the alternative, even if the Court had jurisdiction over this matter, it would, in its

discretion, decline to exercise such jurisdiction to hear Plaintiff's complaint under the Declaratory

Judgment Act.  The Declaratory Judgment Act "confers a discretion on the courts rather than an

absolute right upon the litigant."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).  In

deciding whether to exercise its permissive jurisdiction, district courts may consider "equitable,

prudential, and policy arguments."  *MedImmune, Inc.*, 549 U.S. at 136 (2007).

        "Anticipatory judgments of non-liability are particularly appropriate where there are

'claims asserting unaccrued or undefined rights or obligations arising under contractual relations

such as insurance and intellectual property.'"  *National Union Fire Ins. Co of Pittsburgh, P.A. v.

International Wire Group, Inc.*, No. 02 Civ. 10338, 2003 WL 21277114, *5 (S.D.N.Y. June 2,

2003) (quotation omitted).  "'However, where the purported use of the [Declaratory Judgment

Act] seeks a declaration of non-liability to preemptively defeat actions grounded on tort claims

involving rights already accrued by reason of alleged wrongful conduct, various courts have held

that [such an] application is not a warranted purpose of the [Declaratory Judgment Act].'"  *Id.*

(quotation and other citations omitted); *see also John Wiley & Sons, Inc. v. Visuals Unlimited,

Inc.*, No. 11-CV-5453, 2011 WL 5245192, *4-*5 (S.D.N.Y. Nov. 2, 2011).  "'The reason for this

rule is clear: declaratory relief is intended to operate prospectively.  There is no basis for declaratory relief where only past acts are involved[.]'" *John Wiley & Sons, Inc.*, 2011 WL 5245192, at *4 (quotation omitted).

In the present matter, Plaintiff admits that it "inadvertently" left the Patent Pending imprint on the mold that it used to create a limited number of Cookie Bouquet Stands.  *See* Dkt. No. 5 at ¶ 14.  Plaintiff claims that, when the mold was formed, it intended to apply for a patent, but no such application was ever filed.  *See id.* at ¶¶ 13-14.  Plaintiff is not seeking prospective relief, but merely a declaration that its past "inadvertent" use of the words "Patent Pending" on its Cookie Bouquet Stand did not violate the False Marking Statute.  Plaintiff is not seeking a declaration that if it continues to label its Cookie Bouquet Stand with the words "Patent Pending" that it would not violate the False Marking Statute because, clearly, without a patent application pending, such a declaration could not be issued.

Moreover, Plaintiff commenced this action seeking a declaration that Defendant did not suffer a competitive injury due to Plaintiff's actions.  Essentially, Plaintiff is raising a defense to a claim that it anticipates Defendant will possibly bring at some unknown time in the future.  As courts have repeatedly recognized, "'[t]he anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure,'" as "'[i]t deprives the plaintiff of his traditional choice of forum and timing, and it provokes a disorderly race to the courthouse.'"  *Hanes Corp. v. Millard*, 531 F.2d 585, 592-93 (D.C. Cir. 1976), *superceded by statute on other grounds*; *see also BASF Corp. v. Symington*, 50 F.3d 555, 559 (8th Cir. 1995).  As such, "numerous courts have refused to grant declaratory relief to a party who has come to court only to assert an anticipatory defense."  *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1271 (S.D. Cal. 2007)

(citing cases). Plaintiff is clearly asking the Court to rule on a defense it would present if Defendant ever brought suit under the False Marking Statute.

Viewed collectively, the various considerations that guide the Court's exercise of its Declaratory Judgment Act discretion weigh in favor of denying relief in this case; and, therefore, the Court grants Defendant's motion to dismiss on this alternative basis.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

 **IT IS SO ORDERED.**

Dated: May 9, 2012
      Albany, New York

`Mae A. D'Agostino`
`U.S. District Judge`